LISIDA CURE, Tutrix, *v.* JEAN PORTE et al.—ON A REHEARING.

When a defendant comes into Court by way of exceptions, he takes the attitude of a plaintiff in making the necessary allegations, and assumes the onus of proving them.

When a party proceeds to trial on the merits, without a decision on the exceptions filed, the latter are considered as waived.

An exception that plaintiff is absolutely without right to stand in judgment, or without interest in the subject matter of suit, may be pleaded at any stage of the proceedings.

An action can only be brought by one having a real and actual interest which he pursues, but as soon as that interest arises, he may bring his action.

A PPEAL from the Third District Court of New Orleans, *Foute,* J.
  *H. Train and P. S. Biron, for plaintiff.*—7 A. 110; 6 A. 494; 8 A. 277; 12 L. 618; 9 L. 355; 2 A. 782; 14 A. 777.

All these decisions clearly show that plaintiff and appellee had the right to maintain the present action.

3 M. 378; 2 N. S. 389; 5 N. S. 343; 1 L. 113, 283; 4 L. 328; 2 A. 1017; 5 A. 382; 5 L. 405; 12 R. 194; 13 L. 373; 11 R. 402 ; 3 A. 222 ; 4 A. 350; 1 N. S. 130; 4 L. 482; 14 L. 288; 14 A. 520; 12 L. 618; 14 A.[657; 14 A. 641; 11 A. 688; 15 A. 188; 14 A. 658.

Decreeing in substance that such a plea as that urged by defendant must be filed, fixed and tried in "limine litis," and is considered as waived if the trial on the merits of the case is proceeded with without asking for judgment on the same in the Court below. And some of the above decisions go as far as to allow suitors to amend by making parties to the suit the proper ones, even after the suit is dismissed or the case remanded.

An exception that plaintiff has not been recognized as administrator under our laws, is not a peremptory but a dilatory exception to his capacity to sue, and waived by the general denial. 6 A. 239, *Wingate* v. *Wheat.*

An exception by a third possessor, that the beneficiary heirs cannot enforce their legal mortgage until a final settlement of the succession is waived by pleading to the merits. 8 A. 73, *Rabatham* v. *Tete.*

If we understand the law at all, defendant not having fixed for trial the above exception, nor exacted a decision upon the same, nor in any urged it upon the Court, must be considered as having, to all intents and purposes, waived and abandoned said exception, and at this late hour has no right to revive it in this honorable Court. O. Hennen's Digest, 2 vol. p. 1220, § 4, p. 1223, §§ 11, 12.

But even if appellant could urge here his defunct exception, " that plaintiff has not shown that she was a creditor of the deceased, would not his proposition dwindle to nought on looking at pages 73, 74 and 75 of the record, and finding that by judgment of separation from bed and board, obtained by her against her husband, Jacques Gallay, she is a

judgment creditor of the deceased for the sum of $450, with legal interest from 29th November, 1853.

And let us here warn appellant's learned counsel that, if the "folle du logis," of which he seems to be so enamored, is to be the battery whence his artillery is to play against the judgment appealed from, that it is not likely this honorable Court will second his rash undertaking.

This Court will hold him to a correct statement of the law and the facts, and will not heed his gratuitous and unwarrantable joke, as for instance, that plaintiff in her petition, and not the Clerk, admitted that she was the divorced wife, and not the widow of Jean Gallay.

She contends that the homestead law of 1852, No. 255, provides as well for widows as for children of deceased persons.

Here we again reiterate the assurance, that far it is from our mind to divert the attention of the Court from the real issue of the case, by quibbles and puns.

And if there be any shortcomings in plaintiff's counsel, "folle du logis," they should be met by sound reasoning and law quotations, and not by taunts and sneers.

Appellant's brief teems with decisions to the effect that tutors have no right ex-officio to administer upon successions accruing to their wards. And, in view of these decisions, your immediate predecessors, said the appellant, adopted the principle laid down in the cases cited in appellant's brief: "That the tutrix and widow in community administers the succession so long as it is not intrusted to an administrator; but so soon as an administrator is appointed, the tutrix's power over the succession is superceded, and in order to bind the succession for a debt the new representative should be made a party."

It is neither novel or marvelous, that he who sues an estate for a debt should make the representative of that estate a party. Such proceedings rest on logic and law. The reason of the law is obvious; further comment is idle. Nugatory would be a judgment against a tutrix and widow in community when there is an administrator appointed. Who ever dreamed to contend against so plain a principle of law? Our "folle du logis" has never catched at straws and created chimeras to fight against. We will therefore suffer to slumber the authorities quoted, where it is most congenial to them, not perceiving what bearing they have on the case at bar.

The widow's position is well defined. She is not sued for a debt due by the deceased; but she is sued in her two-fold capacities of tutrix of her minor children, the forced heirs of deceased, and in her own right as a judgment creditor of the deceased for the sum of $450, exclusive of interest.

She brings a suit for the annulment of a fraudulent and simulated donation, under the garb of a sale, made by her divorced husband to his concubine, Henriette Maldry.

38

She claims not the value of said donation, but simply asks the Court to condemn the appellant to deliver up to the administrator of the succession of Jacques Gallay, her divorced husband, deceased, the property alleged to have been sold or the value thereof, say $1,200, in order that the same be distributed by the administrator of the succession as the law directs. And so was the decretal part of the judgment of the District Judge.

Now, is it seriously contended by appellant, that a creditor has no right at law, to bring such an action ?

On the part of plaintiff and appellee, we say he has.   Uncontrovertible authorities assert he has.   And the interest of the estate, and of the creditors of said estate in unmistakable terms demand it.   See 2 A. 782, and others.

We go further, and say, that the Court is bound ex officio to annul and set aside acts of this kind.   They are contra bonos mores and tainted with fraud.   They are ab initio null and void by themselves, and can have no effect.   Ex turpi contractu oritur non actio.   See C. C. 1885, 1886, 1887, 1889; C. C. 19.

" Il faut distinguer, dit Toullier, si la cause pour laquelle on a promis quelque chose blesse la justice et les bonnes mœurs du côté seulement de la partie qui stipule, ou de la part des deux; dans le premier cas, le promettant n'est point tenu de payer la somme promise, et il peut même la répéter s'il l'a payée; mais dans le second cas, comme il s'agit d'une promesse pour faire commettre un crime, la loi n'oblige ni à payer, ni à restituer ce qui a pu l'être."

Guided by the authorities cited by appellant, the Court might in her discretion suggest the propriety to have the administrator made a party to this suit.   14 A. p. 567.

If this case was to hinge upon mere technicalities, the Court would dismiss the appeal, all the parties to this suit, even the principal party, the deceased's concubine, are not before the Court.   Said concubine has neither appealed from the judgment, nor has been made a party to the appeal.

The last point urged by appellant is, that the plaintiff did not make out her case; that she had to prove, and did not prove :

1. That the sale was simulated.

2. That if not simulated, the sale was fraudulently made for the purpose of conveying the property through the interposition of defendant to the deceased's pretended concubine.

Wherefore, Article 1478 C. C., quoted in appellant's brief, and which was copied verbatim from Article 911 of the Code of Napoleon, commented upon by Marcadé, whose opinion is that the presumption of fraud established by law, against persons reputed persons interposed, could not be extended beyond the limits of the law, and could not be applied to other ascendants, except the father and mother; but not to the brothers and sisters, nor to the person living in concubinage with the person inca-

pable; nor even to the person that the party incapacitated intends soon to marry, admitting their posterior marriage.

If this means anything, it does not apply to the present case, or at any rate unless it is pretended that the deceased, Gallay, was reputed incapable, we are blind to its application here.

The substance of Marcadé's opinion is, that the presumption of fraud could not apply to the person living in concubinage with the party incapable.

The person incapable referred to by Marcadé, could not be contemplated in the present case as the concubine. If it could not the reasoning has no application.

We have Marcadé's direct views on cases of this kind :

"Bien entendu que c'est à celui qui attaquera l'acte d'établir que, sous l'apparence d'un contrat onéreux, il cache une libéralité, ou que la libéralité ne s'adresse réellement pas à celui qu'on a fait figurer comme bénéficiaire."

"It is well understood, that it is incumbent upon the person who attacks the act to establish that under the garb of an onerous contract, it conceals a donation or liberality, or that that liberality is not in favor of the person who figures as the real party or receiver."

The opinion of Marcadé, we have on the 911th Article of the Napoleon Code; and we may unassumingly assert that Marcadé, had he lived under the provision of Article 1468 of our Civil Code, which also declares incapable persons who lived in open concubinage, would have carved his opinion in conformity therewith.

The principle that laws in pari materia must be construed together, justifies our claim to the benefit of Article 1468 of our Civil Code.

We submit, that the presumption of fraud juris et de jure likewise apply in this State, to persons living together in open concubinage.

Let us see if the decisions of the Court of Cassation, the Supreme Court of France, accord entirely with Marcadé's views :

"L'interposition de personne dans une donation ou dans un legs, lorsqu'elle a pour objet de faire passer les choses léguées à des incapables, constitue une fraude. En conséquence, cette interposition peut, dans un tel cas, être prouvée par des témoins ou établie à l'aide de simples présomptions." S. 30, 1, 186; D. 28, 1, 224; L. 87, 279.

"La loi, en disant seront réputées personnes interposées, etc., établit une présomption de droit d'après laquelle la disposition est nulle par cela seul qu'elle est faite à leur profit. Il ne faut entrer dans aucun examen, ni recourir à d'autres preuves, mais celui que la loi ne répute pas personne interposée d'un incapable peut, suivant les circonstances, être déclaré tel. Le motif de cette décision est que la disposition de l'article 911, n'est pas exclusive des autres cas où il peut y avoir lieu à interposition de personne. Cass. 6 juin 1809; D. 7, 20, p. 99.

Fraud as applied to contracts, is the cause of an error bearing on a

material part of the contract, created or continued by artifice with design to obtain some unjust advantages to the one party, or to cause an inconvenience or loss to the other.   C. C. 1841.

Sec. 5. It must be caused or continued by artifice, by which is meant either an assertion of what is false, or a suppression of what is true in relation to such part of the contract as is stated in the second rule.

Sec. 6. The assertion and suppression mentioned in the preceding rule mean not only an affirmation or negation by words, either written or spoken, but any other means calculated to produce a belief of what is false, or an ignorance or disbelief of what is true.

Fraud, like every other allegation, must be proved by him who alleges it, but it may be proved by simple presumptions, by legal presumptions as well as by other evidence.  The maxim that fraud is not to be presumed, means no more than that it is not to be imputed without legal evidence.  C. C. 1842.

Some circumstances and acts attending particular contracts are by law declared to be conclusive, and others presumptive evidence of fraud, etc.  C. C. 1843.

The evidence is loud.  All the circumstances of this case point to the fraudulent character of the transaction, and the conclusion is inevitable for the affirmation of the judgment of the District Court, with costs.

*G. LeGardeur and H. R. Grandmont, for defendant and appellant.*—This is a suit, says the plaintiff in her printed brief, instituted by her in her own name as creditor of the deceased, and in the name and as natural tutrix of her minor children, who are the legitimate and forced heirs of the deceased, to set aside and annul as simulated and fraudulent the sale of a dairy for $1,200 cash, made by the deceased to Jean Porte, for the use and benefit of the deceased's concubine, Henriette Maldry, who is the sister of Jean Porte's wife.

Jean Porte met the allegations of the plaintiff by a general denial, and especially averred that she was neither a creditor of the deceased nor of his estate, and that she had no right or interest to stand in judgment in this case, either in her name or as natural tutrix of her children.

After a protracted trial, the District Judge, without noticing the exception set up by Jean Porte, "that the plaintiff had no right or interest to maintain this suit," gave judgment, not in favor of the plaintiff, but, as she had herself prayed for, in favor of the administrator of the succession, although not a party to the suit, declaring the sale null and void, and condemning Jean Porte to deliver up to the "administrator of the succession of Jacques Gallay the property sold, or the value thereof, say $1,200, in order that the same may be disposed of by said administrator as the law directs."

From this judgment Jean Porte has appealed, and no great efforts will be necessary to convince and satisfy your Honors that the exception set

up by the defendant was well founded in law and should have been sustained by the lower Court.

The plaintiff avers that she and her children are creditors of the succession in the sum of $1,000, under the Act approved March 17, 1852, and entitled "An Act to provide a homestead for the widow and children of deceased persons."

Now, that the plaintiff cannot, in her own right, claim the benefit of the Act she relies upon, clearly results from the fact that the Act was adopted, as shown by its very title, to provide a homestead for the widows of deceased persons, and that she is, as she herself admits in her petition, the divorced wife, and, consequently, not the widow of Jean Gallay.

As regards the children, there is not a tittle of evidence in the record that they are in necessitous circumstances, the sinè quà non condition imperatively required by the Act to entitle them to the relief which the law grants to the children of deceased persons. Nay, their mother herself shows conclusively, by her marriage contract with her second husband, that she is in easy circumstances; and the principle is well settled by the decisions of this Court, that the statute does not apply, when the mother and the children, or either of them, own property to the amount of one thousand dollars. *Stewart* v. *Stewart*, 13 A. 598; *McCall* v. *McCall*, 15 A. 527.

But, be this as it may, the plaintiff has proven by the account of the administrator, which was duly homologated on the 20th March, 1861, and which she herself has introduced in evidence, that she has received from the succession the sum of $175 " to complete " her homestead and that of her children. It is obvious, then, that she and her children had already received or were possessed of property worth eight hundred and twenty-five dollars. The conclusion, therefore, is irresistible, that she and her children are not, as alleged in her petition, creditors, and have consequently no interest, as creditors, to maintain this suit.

But it might be contended that if the plaintiff and her children have no interest, as creditors, to bring this suit, yet the plaintiff, as the natural tutrix of her children, has a clear and undoubted right to demand, on their behalf, the nullity of a sale made in fraud of their legal rights, as forced heirs of the deceased. Conceding that, under the loose, vague and indefinite allegations in the petition, the plaintiff might be permitted to take this position, the answer would be close at hand. The children are beneficiary heirs; their mother has not qualified as administratrix of the succession; nay, that succession is under the control of an administrator in whose favor the judgment appealed from was prayed for and rendered. The consequence is that, as tutrix, she has no right to bring this suit, because no suit can be maintained in the name of minors or other beneficiary heirs, based upon their interest as such, before the succession in which they are interested is finally liquidated and they are put in possession of the residue. The authorities are conclusive upon that point.

In *Self* v. *Morris*, 7 Rob. p. 26, this Court said: "Articles 327 and 330 of the Civil Code, upon which the idea seems to be founded that tutors have a right, ex officio, to administer upon successions accruing to their wards, provide only for the administration of the separate and exclusive property of minors, in which no other persons than themselves have an interest; but when a succession opens in their favor, which under the law cannot be accepted for them except with the benefit of inventory, it cannot properly be said to be their property; and it does not legally come to their possession as beneficiary heirs, until it has been duly administered upon in due course of law. Whatever remains after the payment of the debts of the estate belongs to them, and falls under the administration of their tutor as such. If there be no beneficiary heirs of age, and the tutor of the minors claims to be appointed administrator, he, like any other person, must give security though he should be the father of such minors. It is only when the tutor has been thus appointed administrator, that he can be considered in law as representative of the estate, and can be sued as such in the Court of Probates, for debts due by it."

In *Hall* v. *Parks*, 9 Rob. 139, the plaintiffs having enjoined an execution issued against them upon a twelve months' bond belonging to the succession of John M. Tompkins, a motion to dissolve was filed by G. N. Parks, as tutor of the minor children of the deceased, and made absolute by the District Judge. On appeal this Court held that the minors, as beneficiary heirs, had never acquired that absolute interest in the property of the estate, which would place said property under the exclusive control and administration of their tutor; that their former tutrix, therefore, had no authority to issue the execution complained of by the plaintiffs; and that neither of the defendants (the tutor and tutrix) had any capacity to receive the funds proceeding from the twelve months' bonds. The judgment was consequently reversed, and the injunction made perpetual against the defendants, as tutor and tutrix.

In *Parks*, guardian, v. *Patten*, (same vol. p. 169) the same point was again raised, and this Court said: "The question here is exactly the same as the one which was presented and lately decided upon in the case of *Hall* v. *Parks*, in which we held that the mother could not, in her capacity of natural tutrix, nor her husband as guardian of the minors, order an execution to issue upon a judgment rendered for the recovery of a debt due to the succession of the minors' father. We said that, as said succession could not be accepted for the minors but with the benefit of an inventory, an administrator should have been appointed who alone would have the right of suing for the debts due to the estate and of receiving the amount due thereto."

In the matter of the *Succession of George B. Ogden*, 10 Rob. 458, this question was again submitted to this Court, and this Court again said:

"When an administrator has been appointed to a succession, the widow

in community and the tutrix of the minors, who are necessarily benefi-
ciary heirs, have no right to interfere, and have nothing to claim, until
the debts of the estate are paid, and the administration of it has legally
terminated."

In *Andat*, curatrix, v. *Gilly*, curator, 12 Rob. 325, this Court said: " The
record does not show whether the appellants have accepted the succes-
sion of their father, J. B. Lagarde; but, whether they have or not, they
could accept it only with the benefit of inventory. As beneficiary heirs,
they are entitled only to the residue of the estate after the payment of all
its debts. This residuary interest gives them no right to represent the
estate which is under the administration of the curator, who is the legal
representative of the succession."

In the case of *Saloy* v. *Cheixnaydre*, 14 A. 567, your immediate prede-
cessors adopted the principles laid down in the cases above quoted, when
the succession is under the control of an administrator, other than the
tutor, and said:

"The tutrix and widow in community administers the succession so
long as it is not entrusted to an administrator; but, so soon as an admi-
nistrator is appointed, the tutrix's power over the succession is super-
ceded, and in order to bind the succession for a debt, the new represen-
tative should be made a party."

In *State* v. *Heirs of Lekie* (Ibid, p. 641), the same Judges distinctly held,
as their predecessors, that "the beneficiary heir cannot stand in judg-
ment for the succession."

Indeed, other and numerous authorities might be adduced; but enough
has been said to satisfy your Honors that the plaintiff, as natural tutrix,
does not represent the succession, and has, therefore, no right to stand
in judgment for it. If, as alleged by the plaintiff, the sale to defendant
be simulated, it was clearly made in fraud of the creditors of this succes-
sion, which, so far, is palpably insolvent, and it is the imperative duty of
the administrator, who alone has the right to sue, to ask for the rescis-
sion of it, and, in case of success, to distribute the funds which would
come into his hands among the creditors, and to pay the balance, if any,
to the plaintiff, as tutrix of the beneficiary heirs. Should he, however,
refuse or neglect to act, although duly apprised of the circumstances
which make it his duty to act, the creditors and the beneficiary heirs
would, undoubtedly, have the right to hold him responsible for any sum
which he might have recovered, had he done his duty.

This, I apprehend, is the course pointed out to the parties by the laws
and jurisprudence of this State. If they think proper, however, to de-
viate from it, the fault is theirs. But, surely, the tutrix cannot be per-
mitted to bring this suit before the creditors are paid, the succession
finally settled, and the minors put in possession, and thus to trample
upon the law and the decisions of this Court.

The conclusion, therefore, is irresistible, that the exception to the right

of the tutrix to stand in judgment in this suit, should have been sustained by the lower Court.

But, conceding that, although the plaintiff and her children are not creditors of the succession under the statute of 17th March, 1852, and, although the plaintiff, as tutrix, has no right, power and authority to sue for the recovery of property which has to go into the hands of the administrator, and in which, in consequence of the inability of the estate to pay its debts, as shown by the administrator's tableau, her children have but a remote and residuary interest; conceding, I say, that she be permitted to proceed with this suit, has she, on the merits, made out a case which would justify the judgment of the District Court? In my humble opinion, she has not. She alleges that the sale of the dairy to Jean Porte was simulated and fraudulent; that the consideration money was not paid to the deceased, and, if paid, was returned to Jean Porte; and that the whole proceeding was but an attempt, through a disguised donation, to convey the property to the [deceased's concubine, who is the sister of Jean Porte's wife. She had, therefore, to prove:

1. That the sale was simulated; that the price was not paid, and, if paid, had been returned to the purchaser.

2. That, if not simulated, the sale was fraudulently made for the purpose of conveying the property, through the interposition of defendant, to the deceased's pretended concubine.

This, she was absolutely bound to prove, even conceding that Henriette Maldry was the concubine of the deceased and the sister of Jean Porte's wife.

Article 1478 of the Civil Code reads as follows:

" Every disposition in favor of a person incapable of receiving shall be null, whether it be disguised under the form of an onerous contract, or be made under the name of persons interposed. The father and mother, the children and descendants, and the husband or wife of the incapable person, shall be reputed persons interposed."

In commenting upon Article 911 of the Napoleon Code, of which Article 1478 of our Code is a literal copy, Marcadé says (vol. 3, p. 477):

" 1o. Lorsque celui à qui s'adresse une libéralité est capable de la recevoir, la loi ne trouve pas mauvais qu'elle lui soit faite sous le déguisement d'un acte onéreux, ou par l'interposition d'une tierce personne.... Mais quand on n'a eu recours à l'apparence d'un acte onéreux ou à l'interposition d'une tierce personne que pour attribuer une libéralité à une personne déclarée incapable de la recevoir, il est clair que cette fraude faite à la loi ne saurait valider un acte que cette loi prohibait. Bien entendu, c'est à celui qui viendra critiquer l'acte, d'établir que, sous l'apparence d'un contrat onéreux, il cache une libéralité, ou que la libéralité ne s'adresse réellement pas à celui qu'on a fait figurer comme bénéficiaire.....
C'est toujours à ceux qui attaquent l'acte, soit dans le cas de déguisement sous la forme d'un contrat onéreux, soit dans le cas d'interposition de

personnes, d'établir la simulation qu'ils allèguent."

"II. Mais il est un cas, celui de notre article, où la loi pose elle-même la présomption que la libéralité est faite à un incapable, par l'interposition de la personne qui figure dans l'acte. C'est quand cette personne se trouve être le père, la mère, le conjoint ou l'un des descendants de la personne incapable de recevoir. Et comme c'est là une présomption sur le fondement de laquelle la loi annulle l'acte, il s'ensuit qu'on ne serait jamais admis à prouver que cette fraude présumée n'existe vraiment pas, ou même qu'elle ne pouvait pas exister.

"Cette présomption sévère de fraude ne pourrait évidemment pas s'étendre au-delà de ses termes; ainsi, on ne pourrait l'appliquer ni aux ascendants autres que les pères et mères, ni à des frères et sœurs, ni à la personne vivant en concubinage avec l'incapable, ni même à la personne que l'incapable doit épouser prochainement, quoiqu'en effet il l'épousât ensuite."

In this case the allegation is that, under the garb of an onerous contract, the deceased has, through the interposition of Jean Porte, made a donation to his concubine. The act is, therefore, attacked upon the two grounds contemplated in the first paragraph of Art. 1478; but the alleged interposed person is clearly not one of those reputed interposed by the second paragraph. He is neither the father, nor the descendant, nor the husband; he is simply the brother-in-law of the pretended concubine.

It is obvious, then, that under the construction put by Marcadé on Art. 911 of the French Code, which corresponds word for word with our Art. 1478, the burden of proof is upon the plaintiff to show, if not by direct testimony, at least by strong circumstantial evidence, both the "déguisement" and the "interposition;" and this brings us back to what I have already stated, to wit: that the plaintiff is bound to prove:

1. That the sale was simulated; that no price was paid, and, if paid, was returned to the purchaser.

2. That, if not simulated, the sale was fraudulently made for the purpose of conveying the property, through the interposition of defendant, to the deceased's pretended concubine.

A cursory review of the numerous authorities quoted by the plaintiff's counsel at the very last hour, without any previous notice given to us, and which, in justice to ourselves and through respect for the Court, we could not undertake to answer ex abrupto, will satisfy your Honors that if there be any principles laid down in these authorities, that can have any application to this case, they are clearly and unquestionably more in favor of the appellant against whom they were arrayed, than of the appellee in whose behalf they were quoted. 7 A. 110.

In 4 An. 178, Johnson and others, who had been put in possession and had the legal custody of certain slaves belonging to a succession under administration in the State of Arkansas, brought suit for the recovery of

39

those slaves against Imboden who had them in his possession in this State. Imboden excepted on the ground that the plaintiffs had no legal right to maintain the suit. But the Court held, and very properly, too, that "the slaves being in the possession of the plaintiffs in the State of Arkansas, where the succession was still open, and having been delivered to them for safe keeping, their right of possession could not be drawn in question by a mere spoliator." Subsequently, Johnson and others, instituted a suit against Imboden and his sureties, upon the sequestration bond which they had furnished in the first suit. The same exception was again filed, to wit : that the plaintiffs had no legal right to maintain the suit. But it was overruled, in 7 An. 110, upon the ground that "the right to maintain the present action was a necessary consequence of the right to maintain the original action." 6 A. p. 495.

This case was relied upon to show that "an administrator has no right to bring a revocatory action." With due deference, we humbly submit that it shows the very reverse. In effect, the Court held that "a sale cannot be annulled by an administrator, when it clearly appears that no creditor has been injured by it." Whence, the conclusion is irresistible that an administrator has that right, when, as in the case now before your Honors, it clearly appears that there are creditors injured by the sale. 8 A. 277.

This was a suit brought by the widow of the deceased against the curator to set aside the judgment homologating his account, on the ground of fraud and collusion. It was not contended that the widow had no right to maintain the suit. It was objected simply that there was no evidence in the record that she had an interest in the succession; and the Court held that she had an interest, as widow in community. But, be this as it may, the suit was against the curator, who was therefore a party to it. 8 A. 73.

This case is quoted to show that the exception by a third possessor that the beneficiary heirs cannot enforce their legal mortgage until a final settlement of the succession is waived by pleading to the merits. But no such broad and comprehensive rule was laid down by the Court. The defendant had filed his exception upon two grounds, one of which was that the plaintiff, as tutrix, had no right to maintain the suit. The plaintiff amended her petition, and the defendant then without insisting upon or reiterating his exception to the plaintiff's right to stand in judgment, filed an answer in which he pleaded the general issue; and, further, that a tract of land belonging to the deceased had been sold, and that the plaintiffs could not recover until they discuss the proceeds of the sale, or credit them on their claim. The Court considered that the exception was waived by the subsequent filing of this answer to the merits. Under the circumstances of the case, the exception was properly not noticed.

The plaintiffs' right of action was not based upon their interest as beneficiary heirs, but upon the right which, as mortgage creditors, they

had to follow in the hands of the defendant, the property subject to their mortgage. Besides, the action was not brought against a debtor of the succession to enforce payment of a debt due to that succession, but against a third possessor, who owed nothing to the succession to subject the property in his possessson to the mortgage claimed, not by the succession, but by the plaintiffs. In other words, there was no money due to the succession, and to be recovered by the administrator for distribution among the creditors. The defendant owed nothing to the succession; the property he held was subject to a mortgage in favor, not of the succession, but of the minors. The administrator, therefore, would have had no right to bring the suit.

Now, in this case, the exception was not filed separately but at the same with and made part of the answer; and the action is based upon the interest of the minors as beneficiary heirs, and brought for the recovery of property which, if recovered, would have to go into the hands of the administrator, whose duty it would be to distribute the amount recovered among the creditors, and to pay the balance, if any, to the minors, not as creditors but as heirs. It was clearly, then, the duty of the administrator, and he alone had the right to bring this suit. There is consequently no analogy between the two cases.

12 L. R. 618. This suit was brought by the tutor against the administrator, to compel him to render his account. There was judgment against the administrator. He appealed, and contended that there was no proof that the plaintiff was tutor of the minor, in whose behalf the suit was brought. But the Court very properly held that after issue joined it is too late to take exception to the capacity of the plaintiff. Besides, as the Court perceives, the administrator was the defendant in the suit, and therefore a party to it.

9 L. R. 355. This was not a suit brought by a creditor or a beneficiary heir against a debtor of the succession. It was an opposition to the tableau of distribution filed by the administrator. What analogy that case can possibly have to that now before the Court, we are totally at a loss to imagine.

2 A. 782; *Neda* v. *Fontenot.* In that case the suit was brought, as clearly results from the language of the Court, to compel the administrator to take possession of certain assets belonging to the succession. At all events, the suit was cumulated with the opposition filed by the same parties to the order of sale obtained by the administrator himself. It is clear, therefore, that the administrator was a party to the proceedings, and the succession properly represented.

14 A. 777. This case was decided upon the plea of prescription; but, far from saying that the administrator was not a necessary party, the Court on the contrary distinctly said that " the administrator of the succession was a necessary party to the suit, and for this reason alone the

plaintiff's action would fail."

These are all the decisions quoted by the plaintiff's counsel in opposition to the authorities, which we have produced to show that Lisida Cure had no legal right to represent the succession, and to stand in judgment in this case. How far those decisions are responsive to the object for which they were adduced, we leave it for the Court to decide. But, in our opinion, the sword which was brandished against us, has turned into a shield.

The other cases relied upon by our learned adversary, go simply to show that exceptions to form and dilatory pleas can only be pleaded in limine litis. This we have never denied. We simply contend that this rule does not apply to exceptions founded upon a total want of any legal right in a suitor to stand in judgment or which tend to show that the right of action does not belong to the party who seeks to enforce it. The authorities quoted in our petition for a re-hearing are, we think, conclusive upon that point.

LABAUVE, J. This case is on a re-hearing, which we have granted upon the exception to plaintiff's right and interest to maintain this suit. The answer of Jean Porte, which is said to contain said exception, is as follows :

"The separate answer of Jean Porte, one of the defendants in the above entitled case, to the petition of Lisida Cure, the plaintiff herein : This defendant now comes into Court by his undersigned counsel, and reserving to himself the benefit of all exceptions which he may be entitled to by law, *denies the plaintiff's right and interest to maintain the present suit*, and denies all and singular the allegations in said petition contained, especially the capacity of tutrix assumed by said plaintiff, and also her capacity of creditor of the deceased or of his estate.        *        *        *

It seems that the Court below and the counsel considered this as an answer, and nothing more; the case was fully tried and decided on the merits, without any allusion made to any such exception; but it is seriously argued in this Court, and with great talent and ingenuity, that this answer contains an exception to the plaintiff's right and interest to maintain this action, and that it should be maintained, on the ground that there being an administrator to said estate, it is his business and duty to bring this suit, and that plaintiff has no right to do so either as creditor, or as tutrix of her minor children.

When a defendant comes into Court by way of exceptions, he takes the attitude of a plaintiff in making the necessary allegations, and assumes the onus of proving them. Here, the assertions of the defendant are negative, and not affirmative ; he alleges nothing, denies everything, and puts the plaintiff to proof of her demand.

But, conceding that the pretended exceptions really exist in the answer, we are still of opinion that they have been waived and abandoned by the

defendant, in going into trial without requiring a decision upon them. 14 L. 288. In 4 L. 482, exceptions were pleaded to the manner in which the suit was commenced, and to the capacity of the plaintiffs to prosecute it. There, this Court said : "It does not appear in the record that any judgments were pronounced on these exceptions, and as the parties proceeded to trial on the merits, without requiring the exceptions to be decided on, it may properly be considered that they were waived." See 12 R. 194, where the same rule was recognized.

It is true that an exception that plaintiff is absolutely without right to stand in judgment, or without interest in the subject-matter of suit, may be pleaded at any stage of the proceedings ; so it has been decided in 4 N. S. 434; 17 L. 234; 5 R. 253. But the case at bar is very different : The plaintiff sues as natural tutrix of her minor children, who are also the children and heirs of the deceased, who is alleged to have made a disguised donation by a simulated sale, to his concubine, one of the defendants, and to have that sale declared null and void. These minors are the beneficiary and residuary heirs of the deceased, and they have certainly an interest in enriching the succession. Art. 15 C. P.

In *Bernes* v. *Dupre*, 6 A. 494, this Court said : " The acts of the deceased can be attacked only by heirs, legatees or creditors, whose debts existed at the time of her decease.

We are satisfied that we have decided correctly by our first judgment. Our former decision remains undisturbed.